Filed 3/15/24  P. v. Quintero CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICARDO QUINTERO,<br><br>    Defendant and Appellant. | H050793<br>(Santa Clara County<br>Super. Ct. No. C1487776) |

In 2014, Ricardo Quintero pled no contest to assault with force likely to cause great bodily injury, in violation of Penal Code section 245, subdivision (a)(4) (section 245(a)(4)).[1]  Seven years later, the Board of Immigration Appeals (BIA) categorized this offense as a crime involving moral turpitude, which Quintero contends subjects him to removal and other adverse immigration consequences.  Quintero moved to withdraw his plea pursuant to section 1473.7, which permits a defendant to withdraw a plea because of a "prejudicial error" damaging his or her ability to meaningfully understand, and knowingly accept, the plea's adverse immigration consequences.  Quintero argued that he did not anticipate that the BIA subsequently would characterize section 245(a)(4) as a crime involving moral turpitude.  The trial court denied the motion,

---

[1] Subsequent undesignated statutory references are to the Penal Code.

finding no error because the BIA did not make this characterization until years after the plea was entered.  We affirm.

## I. BACKGROUND[2]

### A.     *The 2014 Incident*

In 2014, Quintero and A.L. were married and lived together with A.L.'s two children from a previous relationship, then ages 13 and 17.  On April 28, 2014, Quintero and A.L. got into an argument, after which A.L. left the family home with her 13-year-old daughter.  The next day, A.L. drove back and asked her 17-year-old son to meet her.

As A.L's son walked to the car, Quintero approached in his truck.  A.L. and the children fled in A.L.'s car but Quintero pursued.  Both cars ended up in a Safeway parking lot where Quintero "rammed" his truck into the back of A.L.'s car.  Quintero then drove the truck into the side of A.L.'s car.  A.L.'s car became "stuck or connected" to Quintero's truck, which initially prevented her from fleeing.  Ultimately, A.L. was able to disengage and drive away, but Quintero continued to pursue A.L. around the parking lot until A.L. "screamed for help and begged a nearby witness to call 911."  When Quintero realized police were coming, he fled.

### B.     *The Plea*

The Santa Clara County District Attorney charged Quintero with one count of assault with a deadly weapon, a strike offense.  (§ 245, subd. (a)(1) (section 245(a)(1)).)  The complaint also alleged that Quintero used a deadly weapon (the truck) in committing the offense.  (§§ 667, 1192.7.)  At the time of the offense, Quintero had a 2007 felony

---

[2] As Quintero was convicted by plea, the facts underlying his offense are taken from the probation report.

2

conviction for willful infliction of corporal injury on a spouse/cohabitant, which involved the use of a knife, in violation of section 273.5, subdivision (a).[3]

Quintero, through counsel, requested and received a continuance for investigation and " 'immigration research.' "  He subsequently asked the district attorney to reduce the charge "from a strike felony offense of Penal Code section 245, subdivision (a)(1) to a non-strike felony offense of Penal Code section 245, subdivision (a)(4)."  The district attorney agreed to the reduction.  Both prosecutor and defense counsel recognized that this disposition was "an attempt to resolve a case with consideration of immigration consequences."

In December 2014, pursuant to a negotiated plea, Quintero pled no contest to a violation of section 245(a)(4).  The terms of the plea included a nine-month county jail term, three years of formal probation, a 52-week domestic violence class, a 16-week parenting class, and a peaceful contact order with respect to A.L. and her children.  The district attorney dismissed the section 245(a)(1) charge in view of the plea.  Quintero completed a written plea form, in which he acknowledged that prior to entering the plea, he had a full opportunity to discuss with his attorney "the consequences of this plea, including immigration consequences, if applicable."  Quintero also acknowledged that he understood his plea created a risk of adverse immigration consequences:  "I understand if I am not a citizen of the United States, my plea of guilty or no contest in this case may result in my deportation (removal), exclusion from admission (re-entry) to the United States, or denial of naturalization and amnesty pursuant to the laws of the United States.  My attorney has talked to me about this, and I am entering my plea understanding these consequences."

_____

[3] In 2021, the 2007 conviction was vacated pursuant to section 1473.7.  In 2022, another prior conviction, for using and possessing methamphetamine, also was vacated pursuant to section 1473.7.

In March 2015, the trial court sentenced Quintero. Upon completing his probation term, Quintero moved to reduce his conviction from a felony to a misdemeanor. (§17, subd. (b).) In 2020, the court granted the motion.

C.     *The Section 1473.7 Motion*

In 2022, pursuant to section 1473.7, Quintero moved to withdraw his plea. In the motion, Quintero argued that he did not meaningfully understand the actual and potential immigration consequences of his plea because of the "complexities of the immigration laws" and because federal immigration law did not categorize his offense as a crime involving moral turpitude until years later.[4] In a declaration accompanying the motion, Quintero alleged that at the time of the plea he had "strong family, community ties, obligations, and opportunities" in the United States, was gainfully employed, and "was married to a U.S. citizen and had a U.S. citizen son." He represented that he would not have accepted the plea had he known that the conviction would result in "mandatory removal, inadmissibility for life and denial of virtually all benefits." He asserted that at the time of the plea, the "right to remain in the United States was more important . . . than any potential jail sentence."

In the hearing on the motion, Quintero testified that he was a green card holder at the time of the plea and was unaware the plea would have adverse immigration consequences. He denied knowing or being advised that the charge qualified as an aggravated felony, a crime of violence, or a crime involving moral turpitude. Quintero reiterated that had he known that his plea would have adverse immigration consequences, he would not have accepted it and instead would have "do[ne] more time to stay around

---

[4] Quintero's motion mistakenly asserted that he had pled to violating section 245(a)(1), which the BIA categorized as a crime involving moral turpitude in 2017. (*Matter of Wu* (BIA 2017) 27 I&N Dec. 8.) In fact, Quintero pled to violating section 245(a)(4), which the BIA did not categorize as a crime involving moral turpitude until 2021. (*Matter of Aguilar-Mendez* (BIA 2021) 28 I&N Dec. 262, 266 (*Aguilar-Mendez*).) As both cases were decided after Quintero entered the plea, this discrepancy does not affect our analysis.

my family."  On cross-examination, Quintero conceded that he had not yet suffered adverse immigration consequences but testified that he wanted to make sure "[he is] clean to present [him]self" prior to renewing his green card.  Quintero did not know whether his conviction would affect his ability to renew his green card because he had not yet applied for renewal.

The prosecutor asked Quintero about his family and community ties in 2014. Quintero responded that his family ties in the United States included his mother and brother.  He stated that he was close to his mother without further elaboration.  He did not indicate whether he was close to his brother.  He made no mention of the "U.S. citizen son" referenced in his declaration.  As for community ties, Quintero stated that he "went to a program for alcoholics and drug addiction for three years."  Upon further questioning, he conceded that the first year of that program was "court[]ordered." Quintero testified that in 2014, his strong community ties included helping "people that got problems."  When the prosecutor asked him to elaborate on the type of problems and nature of help, Quintero declined to answer and said, "I don't think I have to go give all of these explanations."

Alfredo Morales, Quintero's counsel from 2014, also testified.  Morales stated that he had asked for a reduction of the charge from section 245(a)(1) to section 245(a)(4) because he believed the latter to be a "better resolution for the client."  According to Morales, the section 245(a)(4) charge was better because it was "less serious" and also "because of the immigration consequences."  Morales had no independent recollection of Quintero's case but testified that in 2014, if he was aware a plea could have immigration consequences, his practice was to review immigration issues with clients.  Morales believed he followed this practice in Quintero's case.

Daniel Okonkwo, the prosecutor who negotiated Quintero's plea, also testified. Though he had no independent recollection of Quintero's case, Okonkwo testified that the offer to Quintero to reduce the charge and limit custody time was consistent with

5

offers made to mitigate collateral consequences, including immigration consequences. When asked whether he and Morales discussed whether the charge constituted a crime involving moral turpitude, Okonkwo replied, "we left immigration consequences and the immigration law up to the defense attorney and their client."

On January 30, 2023, the trial court denied Quintero's motion to withdraw his plea. The court observed that to vacate a conviction under section 1473.7, Quintero had to show " 'a *prejudicial* error that affected [his] ability to meaningfully understand the actual or potential immigration consequences of a plea.' [Citations]." It concluded that Quintero had failed to show error because he did not assert "that the law *in effect at the time of his plea* in 2014 rendered him subject to potential or actual adverse immigration consequences." "In fact," the court continued, "it wasn't until 2017[5]—several years after his plea in 2014—that federal law was clarified in a way that is unfavorable to him." The trial court concluded that neither the complexities of federal immigration law nor a "purported change and/or clarification in federal law occurring *after* [Quintero's] plea" constituted a " 'prejudicial error damaging [Quintero's] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' (Pen. Code, § 1473.7(a)(1).)"

On February 2, 2023, Quintero filed a timely notice of appeal.

## II. DISCUSSION

On appeal, Quintero contends that the trial court should have found prejudicial error under section 1473.7. Specifically, Quintero argues that his failure to anticipate a post-plea clarification to immigration law qualified as error under the statute. He also argues that the error was prejudicial, that is, there was a "reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).)

---

[5] As previously noted, the BIA did not deem section 245(a)(4) to be a crime involving moral turpitude until 2021. (*Aguilar-Mendez, supra,* 28 I & N. Dec., at p. 266.)

6

Independently reviewing the denial of Quintero's motion to withdraw (*id*. at pp. 523-528), we conclude that Quintero has failed to show either error or prejudice.

Under section 1473.7, a person no longer in criminal custody may move to vacate a conviction if "[t]he conviction . . . is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."  (§ 1473.7, subd. (a)(1).)  "[P]rejudicial error" occurs if the person "(1) . . . did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges." (*People v. Mejia* (2019) 36 Cal.App.5th 859, 862.)[6]  Such error may result from a defendant's own mistake of law or inability to understand a plea's potential adverse immigration consequences.  (*Id.* at p. 871.)

As the United States Supreme Court has observed, "[i]mmigration law can be complex," and there are "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain."  (*Padilla v. Kentucky* (2010) 559 U.S. 356, 369.) Quintero faced such a situation when he pled no contest.  In 2014, it was uncertain whether California assaultive crimes such as sections 245(a)(1) and 245(a)(4) were crimes involving moral turpitude for immigration purposes.  (See *Ceron v. Holder* (9th Cir. 2014) (en banc) 747 F.3d 773, 782-783 [remanding case involving section 245(a)(1) to the BIA because an "[a]ssault may or may not involve moral turpitude" and it was "uncertain whether a conviction under California Penal Code section 245(a)(1)

---

[6] Effective 2019, the Legislature further amended section 1473.7 to require the moving party to "establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization."  (§ 1473.7, subd. (e)(1); Stats. 2018, ch. 825, § 2.)  Because we resolve Quintero's appeal on other grounds, we need not decide whether he has met this additional requirement.

7

categorically involves moral turpitude"].)  In light of this uncertainty, Quintero's claim that he did not meaningfully understand the immigration consequences of his plea cannot be rejected merely because the law changed after he entered the plea.  Nor can the claim be accepted because the law was unsettled and the potential for an adverse change was realized.  Instead, the pertinent question is whether, properly understanding the law at the time, Quintero should have anticipated how this uncertainty might be resolved and, in particular, whether the risk of an adverse resolution was so great that it would have affected his decision to plead no contest.

We need not determine exactly what risk Quintero faced in 2014 because Quintero has failed to present any evidence that it was foreseeable then that the BIA might determine that section 245(a)(4) is a crime involving moral turpitude, much less that he should have taken that risk into account during plea negotiations.  In his declaration, Quintero stated only that at the time of the plea, he "did not receive clear[,] detailed, meaningful advice based on [his] specific situation and background regarding the mandatory immigration consequences of my criminal case."  Unlike movants in other cases, he presented no evidence that it was reasonably foreseeable in 2014 that section 245(a)(4) would be held a crime of moral turpitude.  (Compare *Vivar, supra*, 11 Cal.5th, at p. 520, fn. 2 [immigration expert opined at hearing on section 1473.7 motion that defendant's conviction "triggered the worst of all immigration consequences"].)[7] Absent such evidence, Quintero cannot show he accepted his plea because of an erroneous understanding of the risks he faced.

Quintero also has not shown prejudice, which requires a "reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or

---

[7] We do not hold that section 1473.7 always requires defendants to present expert testimony from an immigration law specialist.  We hold only that under the facts of this case, including the uncertain status of California assaultive crimes in 2014, Quintero has not demonstrated error.

8

potential immigration consequences." (*Vivar, supra*, 11 Cal.5th, at p. 529.) In evaluating prejudice, we consider "the totality of the circumstances," including "the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." *(Id.* at pp. 529-530.) "Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial." (*People v. Espinoza* (2023) 14 Cal.5th 311, 320 (*Espinoza*).) Moreover, a defendant may not invalidate a plea bargain based on post hoc assertions about how he would have pleaded. (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1134.) Instead, a defendant must "corroborate such assertions with 'objective evidence.' " (*Vivar, supra*, 11 Cal.5th, at p. 530.)

Quintero has not shown that he had any viable alternative to pleading to a violation of section 245(a)(4). (See *Espinoza, supra*, 14 Cal.5th, at p. 323 [courts may consider "whether alternative, immigration-safe dispositions were available" in assessing prejudice].) While Quintero testified that he would have been "willing to take a harsher sentence in exchange for something that was guaranteed to be immigration safe," he presented no evidence that he could have negotiated a guaranteed immigration-safe offer. Indeed, Quintero called the assigned prosecutor as a witness, but elicited no testimony about possible alternative resolutions. As a consequence, Quintero failed to show that any immigration-safer alternative was available. (Compare *Vivar, supra*, 11 Cal.5th, at p. 531 [prejudice shown by contemporaneous notes indicating availability of alternative offer with more favorable immigration consequences].)

Indeed, Quintero's plea to the section 245(a)(4) charge was already a reduction from the original strike offense. In light of the underlying offense, the fact that it involved 2 minors, and Quintero's prior conviction for a domestic violence felony involving a knife, it seems unlikely that the prosecutor would have afforded Quintero

greater leniency, and Quintero elicited no testimony from the prosecutor suggesting such a possibility. (*People v. Garcia* (2022) 79 Cal.App.5th 1059, 1066 [rejecting defendant's conclusory assertion that he would not have accepted plea had he been aware of adverse immigration consequences where defendant "did not provide any evidence to suggest the district attorney's office would have considered an immigration-neutral disposition"].)[8]

Nor has Quintero shown that trial was a viable option. The case against Quintero was strong, and while the statement the victim provided to probation suggested a likelihood of recantation, that is not unusual in domestic violence cases, and the prosecution had the victim's children, and possibly, an independent witness as well as a corroborating 911 call. In addition, at trial, Quintero's prior domestic violence conviction would have been presumptively admissible against him. (Evid. Code §1109, subd. (a)(1).) Finally, if Quintero had gone to trial, it would not have been on the reduced section 245(a)(4) charge, but rather on the original charge under section 245(a)(1), which is a more serious offense. Consequently, if convicted, he would have faced more jail time as well as the same, if not worse, adverse immigration consequences, especially if he received a sentence of more than one year.[9] Quintero never explained how he could have successfully defended himself at trial, only that he would have "risk[ed] a longer jail sentence," which is insufficient to show prejudice.

---

[8] We also note that the trial court reduced Quintero's section 245(a)(4) conviction to a misdemeanor in 2020. On the record before us, it is difficult to imagine that in 2014, the district attorney would have been open to reducing Quintero's charge to something less than a misdemeanor under section 245(a)(4).

[9] Indeed, had Quintero been convicted at trial of violating section 245(a)(1) and sentenced to more than a year, he would have been subject to the adverse immigration consequences associated with being convicted of an "aggravated felony." (See *People v. Lopez* (2022) 83 Cal.App.5th 698, 710 ["Aggravated felonies include 'crime[s] of violence . . . for which the term of imprisonment [is] at least one year' (8 U.S.C. § 1101(a)(43)(F))"]; *Alberto-Gonzalez v. INS* (9th Cir. 2000) 215 F.3d 906, 909 [under section 1101(a)(43)(F), the phrase " 'for which the term of imprisonment [is] at least one year' " refers to "the actual sentence imposed by the trial judge"].)

To be sure, there are some factors suggesting that Quintero wanted to avoid adverse immigration consequences. Certainly, Quintero and his counsel were concerned about such consequences: Counsel continued proceedings to conduct " 'immigration research,' " and Quintero subsequently requested a plea to a charge encompassing less serious conduct, which the prosecutor and defense counsel agreed was done in "consideration of immigration consequences." In addition, Quintero had "ties to the United States." (*Vivar, supra*, 11 Cal.5th, at p. 530.) He came to the United States at the age of 17 and, at the time of his plea, had been living in the country for 20 years. Quintero also testified about his family and community ties, though the force of that testimony is substantially undermined by the fact that his then-wife was the victim of the underlying assault. (See *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1076 [giving limited value to defendant's ties to girlfriend and child when "the offenses making [defendant] a candidate for mandatory deportation were domestic violence and child cruelty against [that same girlfriend and child]."]) In his declaration, Quintero also referenced a "U.S. citizen son," but he failed to mention this son when asked about family relationships during the hearing. Absent evidence of a viable, immigration-safe alternative, these factors are not enough to demonstrate a reasonable probability that Quintero would have rejected the plea that he was offered.

Accordingly, we conclude that Quintero failed to meet his burden of showing either error or prejudice.

### III. DISPOSITION

The order denying the section 1473.7 motion is affirmed.

11

 

_____
BROMBERG, J.


WE CONCUR:



_____
BAMATTRE-MANOUKIAN, ACTING P.J.




_____
DANNER, J.




*People v. Quintero*
H050793